UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ANTHONY G. PETRELLO and CYNTHIA A. PETRELLO,

                Plaintiffs/Petitioners,

      v.

ZONING BOARD OF APPEALS OF THE VILLAGE OF SAGAPONACK,

                Defendant/Respondent,

and INCORPORATED VILLAGE OF SAGAPONACK,

                Defendant.

**MEMORANDUM & ORDER**
22-cv-02632 (HG)

---

**HECTOR GONZALEZ**, United States District Judge:

    Plaintiffs/Petitioners Anthony G. Petrello and Cynthia A. Petrello ("Plaintiffs") brought this action pursuant to 28 U.S.C. § 1332 against Defendant/Respondent Zoning Board of Appeals of the Village of Sagaponack (the "ZBA") and Defendant Incorporated Village of Sagaponack (collectively, "Defendants"), challenging a portion of the ZBA's Decision which allegedly adversely affected the Plaintiffs' vested rights to develop their property. For the reasons set forth below, the Court exercises its discretion and dismisses the action.

## BACKGROUND

    This case arises from a dispute challenging a portion of an April 8, 2022, decision of the ZBA, which allegedly "repudiated [Plaintiffs'] vested rights to develop their property." Amended Complaint, ECF No. 15 ¶ 7. When Plaintiffs entered into the contract to purchase their property, they and the property's then-owner obtained permission from the Planning Board of the Town of Southampton ("Planning Board") to divide the property into smaller lots, three of

which Plaintiffs purchased. ECF No. 15 ¶¶ 19, 29–36. As part of that approval, the Planning Board allowed the further division of one of Plaintiffs' three lots into a smaller size than what was otherwise permitted by the then-existing zoning regulations, but also set a maximum floor area for any dwellings built on any of the lots. *Id.* ¶¶ 33–36. In exchange for this zoning variance, Plaintiffs committed to maintaining a certain portion of their property as undeveloped land to function as an agricultural reserve. *Id.* ¶ 27.

After Plaintiffs agreed to purchase the property, the closing of the sale was delayed significantly due to litigation between Plaintiffs and the prior owner. *Id.* ¶¶ 41–42. While that litigation was pending, the Village of Sagaponack was incorporated as an entity separate from the Town of Southampton, and the new village enacted its own zoning laws (the "Village Law"). *Id.* ¶¶ 44–47. The new Village Law decreased the floor area permitted for dwellings on Plaintiffs' property and added restrictions related to the construction of other roofed structures, such as pergolas. *Id.* ¶ 50. Plaintiffs did not obtain title to the property pursuant to a court order until after the Village Law had been enacted, despite having agreed to purchase the property nearly a decade before its enactment. *Id.* ¶ 44.

In 2017, Plaintiffs applied to the Village of Sagaponack for permission to modify the lot lines dividing their properties to shift land from one lot to another. *Id.* ¶ 58. In 2018, Plaintiffs applied for a zoning variance that would allow them to build a house with a larger floor area than allowed by the Village Law, along with other non-conforming features, such as additional roofed structures on one of the lots. *Id.* ¶ 68. The Village of Sagaponack approved the lot-line modification but denied the zoning variance related to the construction of the house and additional structures. *Id.* ¶¶ 60, 70. Plaintiffs appealed that denial to the ZBA, arguing that the old zoning rules (and associated variances) put in place by the Town of Southampton applied to

2

the development of their property rather than the newer Village Law enacted by the Village of Sagaponack. *Id.* ¶ 71. The ZBA denied Plaintiffs' appeal on June 14, 2019, finding that the Village of Sagaponack's regulations apply instead. *Id.* ¶ 71. Plaintiffs submitted a new development plan in 2020, which included a smaller proposed house, but the ZBA rejected that plan as well in a decision dated April 8, 2022 (the "ZBA Decision"). *Id.* ¶¶ 7, 72–78; ECF No. 15-1.

On May 6, 2022, Plaintiffs filed a complaint against Defendant ZBA challenging the ZBA Decision. ECF No. 1. Plaintiffs seek: (i) a finding that the ZBA Decision was erroneous pursuant to Article 78 of New York's Civil Practice Law & Rules ("CPLR"), and (ii) a declaratory judgment against Defendants. *Id.* ¶¶ 85–93. On July 8, 2022, Plaintiffs filed an amended complaint adding Defendant Village of Sagaponack as a defendant. ECF No. 15. On August 18, 2022, the Court ordered Plaintiffs to show cause why the Court should not exercise its discretion to dismiss the case for lack of subject matter jurisdiction. *See* Order dated August 18, 2022. On September 9, 2022, Plaintiffs filed a response. ECF No. 27. On September 16, 2022, Defendants filed a reply. ECF No. 29.

## DISCUSSION

### I. Subject Matter Jurisdiction

The Court has an obligation to examine and determine with certainty whether it has subject matter jurisdiction over a case pending before it. *See Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006) ("The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation . . . ."). In this case, Plaintiff alleges that the Court possesses subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), which grants district

3

courts "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1); ECF No. 15 ¶¶ 14–15 ("There is complete diversity of citizenship between Plaintiffs/Petitioners (Texas), on the one hand, and Defendant/Respondent ZBA (New York) and Defendant Village of Sagaponack (New York), on the other.").

However, courts in this district have dismissed cases for lack of subject matter jurisdiction on the ground that judicial abstention was warranted pursuant to the *Burford v. Sun Oil Co.*, 319 U.S. 315, 317 (1943) abstention doctrine. *See Sojitz Am. Cap. Corp. v. Keystone Equip. Fin. Corp.*, 88 F. Supp. 3d 59, 61 (D. Conn. 2015) (finding that "a motion to dismiss based on principles of abstention, is properly styled as a motion to dismiss for lack of subject matter jurisdiction"); *City of New York v. Milhelm Attea & Bros.*, 550 F. Supp. 2d 332, 341 (E.D.N.Y. 2008) ("A motion to dismiss based on the abstention doctrine is also considered as a motion made pursuant to Rule 12(b)(1).").

The Court is satisfied that subject matter jurisdiction based on diversity of citizenship is met in this case. The parties are citizens of different states (Texas and New York), and the matter in controversy exceeds $75,000, because Plaintiffs allege that the market value of their property would increase by $1 million if their interpretation of the zoning rules were to prevail. *See* ECF No. 15 ¶¶ 15, 17. The Court therefore considers whether abstention under *Burford* is appropriate.

## II. *Burford* Abstention Doctrine

"Although the Court has diversity of citizenship subject matter jurisdiction, federal courts may decline to exercise their jurisdiction, in otherwise exceptional circumstances, where denying a federal forum would clearly serve an important countervailing interest." *Sojitz*, 88 F. Supp. 3d

4

at 62 (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996)) (internal quotation marks omitted).  "One such class of exceptional circumstances was recognized in *Burford v. Sun Oil Co.*, where the Supreme Court held that a federal court may abstain from exercising jurisdiction over a case where federal review would disrupt a state's ability to administer local affairs which are of great interest to the state." *Id.*

Under the *Burford* abstention doctrine, a federal court must decline "to interfere with the proceedings or orders of state administrative agencies," "[w]here timely and adequate state-court review is available," [1] and "(1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639, 649–50 (2d Cir. 2009) (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989)).  A court's power to dismiss a case pursuant to *Burford* abstention is rooted in "the discretion federal courts have traditionally exercised in deciding whether to provide equitable or discretionary relief"—exactly the type of relief Plaintiffs seek here. *Quackenbush*, 517 U.S. at 730; ECF No. 15 at 23–27.  On the other hand, dismissal is not appropriate when a plaintiff asserts claims for money damages.  Under those circumstances, a court exercising *Burford* abstention should stay

---

[1]   CPLR § 205 permits Plaintiffs to commence an action in state court within six months of this Court's Order dismissing the case, provided that the "new action would have been timely commenced at the time of commencement of the prior action" without regard to CPLR § 217, the applicable statute of limitations for Article 78 proceedings.  N.Y. CPLR § 205; *see also Palagonia v. Sachem Cent. Sch. Dist.*, No. 08-cv-0791, 2012 WL 1391917, at *10 (E.D.N.Y. Feb. 14, 2012).

5

the case, rather than dismiss it, while the parties pursue state remedies. *Quackenbush*, 517 U.S. at 730–31.

The Second Circuit tailored the *Burford* analysis, and "identified three factors to consider in connection with the determination of whether federal court review would work a disruption of a state's purpose to establish a coherent public policy on a matter involving substantial concern to the public." *Liberty Mut. Ins.*, 585 F.3d at 650. These factors include: (i) "the degree of specificity of the state regulatory scheme"; (ii) "the need to give one or another debatable construction to a state statute"; and (iii) "whether the subject matter of the litigation is traditionally one of state concern." *Id.* "Every abstention case is nevertheless to be decided upon its particular facts and not with recourse to some mechanical checklist." *Sojitz*, 88 F. Supp. 3d at 63.

In evaluating the aforementioned factors against the facts present in this case, the Court finds that federal review of the ZBA Decision would "threaten[] to frustrate the purpose of the complex administrative system" that New York, along with its towns and villages, have established. *Quackenbush*, 517 U.S. at 725.

A. *Specificity of State Regulatory Scheme*

Plaintiffs ask this Court, pursuant to Article 78 of the CPLR, to "modify the portion of the ZBA Decision that denied" their request to apply the Town of Southampton regulations pertaining to the maximum total floor area of a dwelling. ECF No. 15 at 25. New York's statutory scheme establishes specific rules governing: (i) zoning board of appeals' decision-making, *see* N.Y. Village Law §§ 7-712-A, 7-712-B; and (ii) appealing decisions of a zoning board of appeals by way of an Article 78 proceeding, *see* N.Y. Village Law § 7-712-C. Article 78 establishes a process for challenging and/or appealing the decision of a New York state or

6

local body, or administrative agency. *See* N.Y. CPLR § 7801 *et seq.* Jurisdictionally, Article 78 requires that the proceeding be brought exclusively in New York Supreme Court. *Id.* § 7804(b). The state court then evaluates the decision of the zoning board of appeals to determine whether the board's action was arbitrary and capricious, illegal or an abuse of discretion, and was supported by substantial evidence. *See Sid Jacobson Jewish Cmty. Ctr., Inc. v. Zoning Bd. of Appeals of Inc. Vill. of Brookville*, 144 N.Y.S.3d 54, 56 (N.Y. App. Div. 2021). Thus, it is clear that New York has an adequate and specific state regulatory scheme. Plaintiffs may initiate a review of the ZBA Decision and vindicate their rights in New York Supreme Court. This is further evidenced by the numerous decisions concerning appeals of decisions of the ZBA or the zoning board of appeals for the Town of Southampton and the Village of Sagaponack. *See, e.g., Bennett v. Zoning Bd. of Appeals of Vill. of Sagaponack*, 96 N.Y.S.3d 246 (N.Y. App. Div. 2019); *Hadland v. Zoning Bd. of Appeals of Town of Southampton*, 942 N.Y.S.2d 361 (N.Y. App. Div. 2012); *Savetsky v. Bd. of Zoning Appeals of Town of Southampton*, 774 N.Y.S.2d 188 (N.Y. App. Div. 2004).

Plaintiffs suggest that diversity jurisdiction is "critical" because of potential biases of the village's local government and the ZBA, which Plaintiffs allege are heightened by their previously long-running litigation against the former owner of the property, whose son is a member of the ZBA. *See* ECF No. 27 at 6–7. The Court does not find these arguments persuasive since any review of the ZBA Decision will be done by a state court that is independent and neutral. Accordingly, this factor weighs in favor of abstention.

  B. *Construction of State Statutes*

The second factor requires the Court to consider the necessity of discretionary interpretation of state statutes. *See Bethphage Lutheran Serv., Inc. v. Weicker*, 965 F.2d 1239,

7

1243 (2d Cir. 1992). The Court's adjudication of Plaintiff's Article 78 proceeding would involve consideration of complex issues including: (i) determining whether the Village Law supersedes the zoning laws of the Town of Southampton; (ii) reviewing the ZBA Decision and the extensive accompanying record of the ZBA; and (iii) interpreting various state and local laws. Moreover, contrary to Plaintiffs' assertion, Plaintiffs' challenge of the ZBA Decision will necessarily have a "precedential impact" in the Village of Sagaponack. ECF No. 27 at 1. Any finding could affect landowners impacted by the new zoning regulations. "[A]s these questions concern important state interests, and are of peculiarly local concern, resolution of how local zoning regulations should be construed in light of state law is best left to the state judiciary." *See N. Haven Plan. & Zoning Cmm'n v. Upjohn Co.*, 753 F. Supp. 423, 427 (D. Conn. 1990); *see also Canaday v. Koch*, 608 F. Supp. 1460, 1568 (S.D.N.Y. 1985) ("If the federal court's ruling could have 'broad impact on state policy,' then abstention may be proper." (quoting *Smith v. Metro. Prop. & Liab. Ins. Co.*, 629 F.2d 757, 760 (2d Cir. 1980)) (internal quotation marks omitted)), *aff'd*, 768 F.2d 501 (2d Cir. 1985). Accordingly, the Court finds that this factor also weighs in favor of abstention.

  C. *Subject Matter of the Litigation and State Concerns*

  The Court has not been able to find any guidance from the Second Circuit addressing whether courts may exercise diversity jurisdiction over state law claims arising under Article 78. The Second Circuit has, however, expressly declined to establish a *per se* prohibition against federal courts exercising supplemental jurisdiction over such claims. *Carver v. Nassau Cnty. Interim Fin. Auth.*, 730 F.3d 150, 155 (2d Cir. 2013) ("We need not decide, however, whether Article 78 can, on its own, deprive a federal court of jurisdiction over claims brought under that provision, as some district court cases have held."). Even in the absence of a total prohibition,

8

however, the Court concludes that other district courts' repeated refusals to exercise jurisdiction over Article 78 claims—or over zoning disputes more generally—weighs in favor of abstention in this case.

Courts in this Circuit have previously abstained from considering claims that are essentially challenges to adverse zoning decisions. *See, e.g.*, *N. Haven Plan. & Zoning Cmm'n*, 753 F. Supp. at 427 ("Local land use decisions have repeatedly been held to be issues of local concern. Accordingly, resolution of [defendant's] contention that it has not committed a zoning violation is not properly before this Court." (internal citations omitted)), *aff'd*, 921 F.2d 27 (2d Cir. 1990); *Ne. Mines, Inc. v. Town of Smithtown*, 584 F. Supp. 112, 115 (E.D.N.Y. 1984) ("State zoning regulations and local land use decisions have repeatedly been held to be issues of local concern. . . . Thus, we find that this action is essentially local in nature and is properly brought in New York State Court. We abstain and dismiss this action on *Burford* grounds."). Outside of the zoning context, intruding into the decision-making process of state and local administrative agencies is inadvisable where the state, through Article 78 review, "has constructed a complex system of administrative review and appeal . . . and has specified a method of judicial review." *Canaday*, 608 F. Supp. at 1470 (abstaining where claims related to provision of shelter for homeless families).

Even where plaintiffs have sought to frame their zoning grievances as federal constitutional claims under the Equal Protection Clause or Due Process Clause, the Second Circuit has interpreted these constitutional rights narrowly in the zoning context in order to avoid the federal courts becoming "overseer[s] of arbitrariness in state and local land-use decisions." *Zahra v. Town of Southold*, 48 F.3d 674, 680 (2d Cir. 1995) (dismissing substantive due process claim). "[I]n our federal system, that is the province of the state courts." *Id.* In fact, the Second

9

Circuit reiterated earlier this year that federal courts "do not sit as a court of review for the zoning board." *Santucci v. Levine*, No. 21-1329-cv, 2022 WL 121281, at *2 (2d Cir. Jan. 13, 2022) (dismissing Fourteenth Amendment selective enforcement and First Amendment retaliation claims). This reticence to impose constitutional limitations on local zoning decisions weighs in favor of abstention because Plaintiffs' attempt to invoke diversity jurisdiction over their purely state law claims presents even less of a federal interest.

Although Plaintiffs have cited several cases supposedly demonstrating that courts in this Circuit have exercised jurisdiction over Article 78 claims, none of those cases precludes abstention here. Plaintiffs cite only one case in which the court even considered abstention, and the court decided to retain jurisdiction over the plaintiff's Article 78 claims because it sought only money damages. *See Elite Med. Supply of N.Y., LLC v. State Farm Mut. Ins. Co.*, No. 13-cv-918, 2014 WL 823439, at *4 (W.D.N.Y. Mar. 3, 2014) (exercising diversity jurisdiction). That result was a straightforward application of the principles underlying *Burford* abstention, which the Supreme Court has said does not "authorize . . . 'the outright dismissal or remand of damages actions.'" *Id.* at *4 (quoting *Quackenbush*, 517 U.S. at 721). But those principles do not apply here because Plaintiffs seek only injunctive and declaratory relief to modify the ZBA Decision. ECF No. 15 at 23–27.

In two of the other cases that Plaintiffs cite, which held that jurisdiction existed but did not consider abstention, the plaintiffs similarly sought monetary relief through their Article 78 claims. *See Dukes v. New York City Emps. Ret. Sys.*, 361 F. Supp. 3d 358, 363, 368–69 (S.D.N.Y. 2019) (exercising diversity jurisdiction over widow's lawsuit to collect death benefits from husband's employer); *Casale v. Metro. Transp. Auth.*, No. 05-cv-4232, 2005 WL 3466405, at *1, *5–6 (S.D.N.Y. Dec. 19, 2005) (exercising federal question jurisdiction over former

10

employee's lawsuit for reinstatement and backpay).  Notably, in one of these cases, the court explained that exercising jurisdiction over the plaintiff's Article 78 claims was appropriate because the plaintiff asserted that the procedure his employer used to terminate him violated his Fourteenth Amendment right to due process—and not simply that the determination was arbitrary or capricious.  *Casale*, 2005 WL 3466405, at *1, *5.  The *Casale* court made clear that the presence of this constitutional question was pivotal in its jurisdictional analysis and suggested that jurisdiction would not exist over an Article 78 claim that presented "no federal element whatsoever." *Id.* at *5.  Plaintiffs' Article 78 claim, however, is of the latter kind—it alleges that the ZBA Decision was arbitrary and capricious and lacked a rational basis but does not allege that the decision was contrary to any federal law.  ECF No. 15 ¶ 86.

      Plaintiffs are left citing only one case in this Circuit which a court exercised jurisdiction over an Article 78 claim that demanded predominantly equitable relief:  an order directing a private university to confer the plaintiff's degree.  *Rosenthal v. N.Y. Univ.*, No. 08-cv-5338, 2009 WL 10696888, at *2 (S.D.N.Y. July 21, 2009) (exercising diversity jurisdiction over such claims).  Not only did that plaintiff seek money damages through his other claims, *see id.* at *1, which would have militated against abstention, but the purely private nature of the dispute further counseled against abstention.  Awarding the *Rosenthal* plaintiff his degree would not have involved awarding injunctive or declaratory relief against a state or local government or interpreting a complex web of regulations over which the state courts exercise a special competence.  *Rosenthal*, therefore, does not present the same federalism concerns that favor abstention in this case.

      While it is true that the Court has diversity jurisdiction and therefore can entertain Plaintiffs' claims, the Court must consider the policy against retention of both state-law zoning

11

claims and Article 78 proceedings more generally. While abstention on account of *Burford* should only be used in "extraordinary" circumstances, the Court finds those circumstances present here. *Quackenbush*, 517 U.S. at 728.

## CONCLUSION

For the foregoing reasons, Plaintiffs' case is dismissed pursuant to the *Burford* abstention doctrine. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

                                            */s/ Hector Gonzalez*
                                              HECTOR GONZALEZ
                                              United States District Judge

Dated: Brooklyn, New York
        November 29, 2022